181779 GGNSC Administrative Services, LLC at all versus Jacqueline M. Schrader. Whenever you're ready, Mr. Vail. Good morning, Your Honor. May it please the court, I'm John Vail for the plaintiff. And if I may, I'd like to reserve three minutes for rebuttal. First, just to make sure we're all on the same page here, a note on nomenclature. I'm going to talk about the survival claim, which is held by the estate, and the wrongful death claim, which is held by the beneficiaries. That's how I'll be using those terms. I think it's consistent with the law. When the Sixth Circuit dealt with the issue in front of you, it found that a decedent had no power to bind the beneficiaries of a wrongful death claim to arbitrate that claim because the law, the Planned Kentucky Law here, gave the decedent no cognizable rights in the claim itself. And I want to go through, and that is also true of the law of Massachusetts. It is clear that there is separate ownership of the claims. The estate owns the survival claim. The beneficiaries own the wrongful death claim. A key point is that Massachusetts gives the decedent no power to compromise the claim. The decedent releases a tortfeasor. It has no effect on the claim of the wrongful death beneficiaries. They may still proceed with their claim. I'm not sure why that's relevant. Because it's an indicator that it's been found relevant in other states. Let's talk about Massachusetts law. We all agree that this turns on an interpretation of state law, the wrongful death statute, as well as the cases interpreting it. Now, you know the District Courts three or four reasons for the conclusions it reached that, in fact, this is not an independent claim. It's a derivative claim. It chose to use different language than you do. Would you like to just go down the list and tell us what you think the problems are with each of the reasons? Yes, because I think that the claim is clearly independent. It's owned by them. The finding of the District Court is effectively a finding that the decedent has agency over the claim to choose the form in which the decedent will adjudicate a claim that belongs to them. I mean, if both of us, if two of us in here were hit by the same bus, if one person agreed to arbitrate a claim with the bus company... I'm not following you, because that statement suggests that there is a special rule for arbitration that the state law would adopt. And, of course, that's a preemption. That would be a preemption issue, but this is an application of state property and contract law, which the Federal Arbitration Act tells us you apply in order to characterize a claim. Can we go back to what are the District Court's reasons and why you think those are wrong? I can't. You'll have to remind me, Your Honor, of the District Court's specific reasons. Well, among other things, he says that the beneficiaries recover only for what the decedent could have sought recovery for if the decedent had lived. And that is derived, the Court says, from the statute. That is not correct. The measures of damages are different for the decedent and the wrongful death claim. The wrongful death beneficiaries can recover for the loss of services that they were owed by the decedent. That results from their... How do you get that from the language of the statute, though? I mean, I understand, generally speaking, survivor action versus wrongful death, but how do you reach that conclusion from the language of this statute? Is there a case that holds that in Massachusetts? The Bothe case, the 1939 case I commend to you, talks about the measures of damages and talks about how they have to be tried. They have to be tried to separate verdicts. But that, of course, is before the statute was amended. Well, the statute was amended, but remember that in Gaudet in 1972, which the SJC cited approvingly in 2013, said that the claim is not a statutory claim at all, that it's a common law claim. Modified by the statute. Modified by the statute, it's only in certain ways. Procedurally, not substantively. Another reason the district court gave was that the bringing of a wrongful death action can only be done by the executor or the personal representative. And that, too, that's a procedural matter, not a substantive matter. Because it's clear that the trustee who brings the two different claims, brings them in different trust capacities for the two holders of the claims. The trustee who receives it when, and that goes to the Bothe case, when the personal representative brings the case and receives proceeds, the proceeds for the wrongful death beneficiaries must be isolated from the proceeds that are for the estate. And they cannot be attached by the creditors of the estate. That is a measure of independence and separateness. If we're being really candid here, isn't the problem that the wrongful death claim, it's both derivative and it's independent. It's got aspects of both. It's derivative in the sense that it's based on something that's happened to somebody else. The beneficiaries don't have a claim unless something has happened to the decedent. It is their own claim. They have their own measure of damages. But it has both aspects. And so it is not surprising, and I think this is what Judge Woodlock said, that the early law in Massachusetts seemed quite clear that it was treated as an independent claim. You look at more recent cases, in light of some statutory amendments, the wrongful death statute, it seems to now be more derivative in nature. And precedents around the country, they're all over the place. Because, fundamentally, the wrongful death claim has both aspects. Given that, why shouldn't we certify this question to the Massachusetts AC? It's not inherent in one way or another. There seem to be policy considerations that go into the determination. Why shouldn't we ask the Massachusetts AC? We would have no objection to your certification of the issue, Your Honor. So, yes, in fact, you belatedly asked for it in the district court. Is that correct? I believe only on reconsideration, Your Honor. Yes, right. And he said too late. So if we were to decide to certify, it would seem to me it would be helpful to the court to get from each of you, within seven days of today, a list of questions that you think are appropriate for certification. It would be simultaneous filings. And I'm not sure I would see why there would be a need to reply unless you tell me that you've got an argument for it. I think the question is actually quite simple. I would put it in writing and send it, each of you, please, in 28-J letters to the court. In a 28-J letter? Yes. Which means don't argue the point in the letter, just give us the questions. Right, I understand 28-J letters, Your Honor. Okay. Thank you. I don't know what more you want to hear. I did want to tick off for you, though, there are no indicators that a decedent is given any agency, any dominion and control, any property interest in the claim of the wrongful death beneficiaries. A key point, they do not, very significantly, they do not stand in the shoes, which is a common phrase, of the estate. And in states, for example, Texas, the Labatt case, where they do, that's been the key point in deciding that the claim was derivative and that the decedent had power. In cases where they don't, Utah, the Bybee case, Ohio, the Peters case, that's been the key determinant in saying that the claim is independent. It's theirs. It's their property. They get to do with it. But, counsel, just, yes, that's all true, but for a defendant who, defending the reckless or negligent conduct that's at issue, can raise defenses based upon the way in which the decedent was acting at the time of the incident. So, again, it seems to me you're overstating. I don't think so, Your Honor. I don't think I overstated because I think that's the only instance. And that does not go to the power of the decedent to make an affirmative choice about the cause of action. That's about how the elements of the cause of action itself work. It's really a fundamentally different inquiry from these other things, like, for example, a decedent's evidentiary admissions are not admissible. Again, in the wealth of that claim. Here's what worries me about the road you're going down, and it's something we've discussed earlier. I thought you had agreed in your brief that the outcome of whether this is an independent or a derivative action or whether the state law would regardless recognize an ability of the decedent to make some choices, all of that has got to be neutral. It cannot turn on the context of an arbitration agreement. And none of the things that I'm laying out for you depend on the existence of an arbitration agreement. Well, I think it may have been implicit in your argument. In any event, I think you've reserved some time. I have. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, my name is Joseph Desmond of the appellees, and with me is my colleague, Justin Amos. The question that Your Honors have asked in terms of whether or not the case could be certified, neither party has asked for that in a timely basis, and while I don't object to that, I think the case can be decided based on a review of the Supreme Judicial Court's teachings on the wrongful death statute. This case does involve a statutory construction and interpretation of the Massachusetts wrongful death statute. And the wrongful death statute, I would defer from my friend who suggested that it provides just a procedural mechanism. It does not. It is a substantive statute that provides the remedies and the elements of the claim for wrongful death. That statute also provides that the claims may be asserted in a single action. It's twice noted in the wrongful death statute that there shall be an action brought by the administrator. Judge Wiglock below did suggest and ruled that because it must be brought by, one of the bases for his finding was that the action be brought by the executive, but the statute above and beyond that provides for one action. There is no authority to bring multiple actions under the wrongful death statute, and it simply is not authorized by the death statute. Judge Wiglock issued his order, but he also declined to stay the state court action. Has the state court stayed the state court wrongful death action? Yes, Your Honor. It was stayed by stipulation of the parties. We had asked for an injunction, which Judge Wiglock found unnecessary in light of the stipulation, that it will be stayed until such time as this present issue is resolved. Okay. Thank you. The most recent teaching of the Massachusetts Supreme Judicial Court is in Sisson v. Lowe when addressing whether or not the consortium claims are derivative, and it's not in the exact context, but it is informative. Judge Lopez, I think, correctly questioned and recognizes the truth, which is there are some legal claims that are not derivative and some factual claims that clearly are. The majority of jurisdictions that have considered the case at bar have determined that the wrongful death beneficiaries claims, the survival claims, are bound by the arbitration agreement. I believe it's 27 to 14 is the total. The ones that the minority jurisdictions in those 14 jurisdictions that have found that the survival claim is independent, entirely independent, have created what I would consider a legal fiction of a complete legal independence. As Judge Lopez asked, there's a mixed matter here of factual and legal issues, and Sisson v. Lowe answers the question as to how Massachusetts considers the independence for determining such things as collateral estoppel, et cetera. The court says in an action for the purposes of determining under the statute of repose, the term, quote, action can be seen as referring to the group of operative facts that give rise for the complaint for medical malpractice. This definition does not include the various remedial claims that may be based on those operative facts, and that's exactly what we have here. In the mass wrongful death statute, there are five bases that trigger potential damages under the wrongful death statute, and then three sets of claims, one of which belongs to the beneficiaries. But they all arise out of the same set of operative facts, which is the death of, in this case, the resident of the nursing home. The Sisson court held that claims for recovery, whether based on personal injury, wrongful death, or loss of consortium, are not distinct, but may derive from the same constellation of facts, and it's went on to rule that in citing three other mass SJC cases, citing prior precedent in the last 20 to 30 years, in which the Massachusetts court looked to the set of operational facts, the operative facts as to whether or not the claim derives from the death. Don't you think it makes more sense to let the SJC resolve the question on certification from us? Because anything that we say, they are not bound by it, and I would think the personal injury bar would want a clear binding determination. In terms of my client's position, I think that I'm here to argue that the decision below was correct and not the broader issue, but I get Your Honor's question in terms of the bigger issue. Counsel, isn't it a fact that the Supreme Court has not... I mean, there are all these earlier precedents which Judge Woodlock acknowledges and opposing counsel points out. I mean, they never repudiated some of those earlier cases. Isn't that correct? Not repudiated, I agree, in terms of the language of Gaudet versus Webb really changed a lot. What happened was that common law, there was no common law claim for death. The statute in the 1940s, I think it was 1947, created a wrongful death claim, which in 1973, the SJC and Gaudet said, well, it had never been recognized before and we have always said that wrongful death was created by statute. We now abandon that theory. It had always existed, and the wrongful death statute only codified what had always been available to common law, even though it hadn't been available prior to the enactment of the wrongful death statute. But in cases, again, not on this issue of whether or not it is derivative, factually versus legally, the Court has said, and specifically Sisson versus Lowell, that they are now technically independent of the wife's claim. In ruling that principles of issue preclusion applied to a prior case of a wife's wrongful death case being barred by the statute of limitations, the husband's subsequent claim for loss of consortium, because it was bound up in the same set of facts, was precluded. So it hasn't been overruled, the term independent, but it has been specifically referred to as technically independent. But Sisson didn't have anything to do with arbitration or a decedent binding heirs or successors in any way. It had to do with issue preclusion in not allowing the husband, the consortium plaintiff, to re-litigate the claims that had been decided against the wife. And the strong dissent in that case discussed this exact issue, relying upon the earlier precedent from Gaudette versus Webb. I think it was Justice O'Connor dissented strongly saying that these are independent claims, he's entitled to re-litigate them, he is not bound. And there are strong dissents in Sisson and I believe the Fidler case, which is similar, in dealing with consortium claims being collaterally stopped by the decision of the prior claim brought by the injured party. The other, again, to answer the question about had it been overruled specifically, the Corrigan case says that they are symbiotic. Again, when discussing whether they're independent or derivative, as Judge Lopez has noted, the SJC has called them symbiotic or technically independent when they are looking at the result of what would happen if they are truly independent legally and factually. When issues of collateral estoppel couldn't apply, statutes of limitations would be different. But what's your best authority for the proposition that the decedent could have bound heirs to an arbitration clause when arbitration under the Federal Act is dependent on consent, not on some technical rule of distribution, but consent? Right, well, the decedent on whose behalf the action is brought, again, going back to the statute, there's one action that's authorized. And it's authorized a single action on behalf of all of those claimants. And to rule that you can't arbitrate wrongful death cases because you can't ascertain the beneficiaries would say that arbitration cannot apply in any case ever to wrongful death cases in Massachusetts, which you can't do. You cannot strike that. And so, again, there's mixed issues of fact and law, but the death statute permits a single action to be brought to recover a different set of damages to different beneficiaries. And in this case, again, what has been pleaded in this case are claims by the estate and the beneficiaries for both negligence and for willful wanton and reckless conduct, which can never be the same. Negligent conduct cannot be willful wanton or reckless conduct. I don't think the state court wrongful death complaint was put into the record in this case, was it? I believe it's in the motion to dismiss. I believe it is in the record. It's attached to the motion to dismiss because I went looking for it and I couldn't find it. I do believe it's in the motion to dismiss. Okay. We can identify it. I'd like to ask your brother, is it in the record in this case? All right. So when you submit your 28Js to us, identify where it is, please. Sure. And the point that I wanted to make is that the first prong or the first of the five ways to get to damages under the wrongful death statute is negligence. The second is for willful wanton or reckless conduct under circumstances that the deceased could have recovered damages. And that is the language that, again, suggests that under the wrongful death statute, that claim is, as Judge Woodblock found, a derivative of the wrongful death claim. Judge Woodblock has a footnote that says under Massachusetts law, negligence and wrongful death are treated the same in terms of that principle. Correct. Is there agreement on that? I agree. There is agreement on that? Yes. Okay. And the point that I wanted to make is that if you are to find that the claims, as my brother has suggested, that the willful wanton or reckless conduct is what, and it does trigger, that's the only one of the first five conduct manners to get to punitive damages. But because they can't be both negligent and willful wanton or reckless, the statute actually provides that the damages that are available, including funeral and burial expenses and consortium to the plaintiff, you can get there by either negligence or by willful wanton or reckless conduct. So you can't have a situation where the plaintiffs now have to split their negligence claim, which they argue is independent, and the wrongful death case for willful wanton or reckless conduct that would be arbitrated because the language says specifically that it's under such circumstances that the decedent would have been able to recover. They'd have to bring two different actions if the court finds that that language makes a difference. And as Judge Lynch points out, Judge Wooddock cured that problem by saying really the same thing anyway. Well, both of you agree that it was correct, and we will take that as a premise in this case. Okay. Okay. I have nothing further if there are no further questions. Thank you. Thank you, Your Honor. If you'll help me here, Your Honor, I'll just make a couple points to make things clear to this court. I don't know that you've decided to make a certification, but I assume we'll hear from you quite quickly either today or by order that you will. No, you're not going to hear from us until you submit questions to us. Questions.  That's my question, Your Honor. And we will advise you later of what we are doing. Okay. That's my question, Your Honor. Is your order to us today to submit those questions here?  Yes. Okay. You have one week. I just want to be very clear about that. And we will do that happily, Your Honor, and readily. This decision case is simply a straightforward application of preclusion principles. There's no question about whether you'd find these people in privity for purposes of preclusion doctrines. That's different from the question of whether the decedent can exercise dominion and control over the other cause of action, which is the key inquiry. And, you know, both of us have evoked the language of independent versus derivative, which is conclusively language. It's not really about the key inquiry. Is there a property interest? Is there dominion and control of the decedent over the claim of their wrongful death beneficiaries? And the answer, as we've briefed and as we point out, is continually no. There's no indication of it. The single action, again, it's clear from the case law. It's a procedural tool. The two actions can be subject to different statutes of limitation. One can be brought at different times, have to be brought at different times. That's Gedet, for example, holds exactly that. There was a suggestion. I think with that, Your Honor, unless you have further questions for me, I'll sit down. All right. Thank you. Thank you, Your Honor. Thank you.